IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES T. LUTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 4:11cv00057 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is matter is before the court on Defendant Wells Fargo Bank's ("Wells Fargo") Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim filed, (Dkt. No. 32), and Adkins's motion for summary judgment (Dkt No. 23.) On May 10, 2012, this court concluded that Plaintiff James T. Luther's ("Luther") original complaint failed to state a claim upon which relief could be granted and allowed Luther 15 days to amend his complaint. (Dkt. No. 30.) Luther filed an Amended Complaint on May 24, 2012, (Dkt. No. 31), and Wells Fargo then filed its Motion to Dismiss the First Amended Complaint. (Dkt. No. 32.) Oral argument on the matter is unnecessary at this time, and the motion is ripe for decision.

By Order dated February 14, 2012, the court referred all dispositive motions to me for proposed findings of fact and a recommended disposition of the case, pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the relevant documents, case law, and statutory authority, I conclude that Luther fails to plead sufficient facts to support his claims of fraud, violations of the "Truth in Lending Act," ("TILA"), and the "Real Estate Settlement and Procedures Act,"

("RESPA"). For the reasons set forth herein, it is **RECOMMENDED** that Wells Fargo's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 30) be **GRANTED**, that Luther's Motion for Summary Judgment (Dkt. No. 23), Motion for Leave to File Second Amended Complaint (Dkt. No. 39), and Motion for an Extension of Time to Answer Defendant's Discovery Requests be **DENIED** as moot, and that this case be **DISMISSED.**

## PROCEDURAL HISTORY AND FACTS

On December 7, 2012, Luther filed a complaint against Wells Fargo alleging "fraud by misrepresenting the true facts," and violations of TILA, 15 U.S.C. § 1601, *et seq.*, and, RESPA, 12 U.S.C. § 2605, *et seq*. On February 27, 2012, Wells Fargo moved to dismiss the complaint and Luther responded with a Motion for Summary Judgment (Dkt. No. 23), which the court construed by Order dated April 3, 2012 as both responsive to Wells Fargo's Motion to Dismiss and seeking summary judgment. (Dkt. No. 27.)

On May 10, 2012, this court found that Luther's original complaint failed to state a claim, and directed Luther to file an amended complaint. Luther filed his First Amended Complaint ("FAC") on May 24, 2012. Thereafter, Wells Fargo filed this Motion to Dismiss, (Dkt. No. 33), to which Luther responded on June 26, 2012. (Dkt. No. 35.) Luther appended approximately fifty pages of exhibits to his June 26, 2012 response. (Dkt. No. 35.) Wells Fargo filed its Rebuttal Brief on July 3, 2012, (Dkt. No. 36), and the court granted Luther limited leave to respond only to the arguments specifically raised in Wells Fargo's Rebuttal Brief. (Dkt. No. 38.) On July 24, 2012, Luther ostensibly filed a Reply to Defendant's Rebuttal Brief, but included a request that the court allow him leave to file a second amended complaint. (Dkt. No. 40.) On July 26, 2012, the Court construed this document as both responsive to Wells Fargo's Rebuttal Brief and seeking leave to file a second amended complaint.

2

In an effort to clarify his FAC, Luther included new facts and exhibits in his memorandum in opposition to Wells Fargo's Motion to Dismiss. (Dkt. No. 35.) It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (*citing Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989) (citation omitted). *See also Davis v. Cole*, 999 F.Supp. 809, 813 (E.D.Va.1998) (refusing to consider additional allegations in response to motion to dismiss); *Sloan v. Urban Title Services, Inc.*, 689 F. Supp. 2d 94, 114 (D.D.C. 2010). Therefore, the court will not consider any new factual allegations or exhibits in Luther's response to Wells Fargo's Motion to Dismiss.

On February 23, 2007, Luther executed separate promissory notes in favor of Wachovia Bank, N.A. (a predecessor in interest to Wells Fargo) consisting of both a fixed rate note and a variable rate prime equity line secured by certain real property.[1] (Dkt. No. 33, Ex. 1). Wells Fargo instituted a foreclosure action on the secured property because of Luther's apparant default on the notes. Luther filed this suit to prevent that foreclosure. While Luther states very little in the way of facts, he alleges that Wells Fargo, through its representative Melanie Turner ("Turner"), failed to disclose the source of his lending, the large financial gain it received from making the loan, the gains it received from allegedly "buying and selling notes," and the "benefits from a bailout of the banking system by congress [sic]." (Dkt. No. 31.) Luther alleges that Wells Fargo's actions amount to fraud done with "evil intent." (Dkt. No. 31 ¶ 4.) Luther claims that the bringing of this suit caused him to suffer emotional distress.

---

[1] The court may properly consider documents referenced in the complaint when considering a motion to dismiss under Rule 12(b)(6). *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The Notes are referenced in Luther's FAC at paragraphs 4, 5, and 6. Therefore the Court may properly consider the Notes in ruling on the Motion to Dismiss.

3

Luther wrote Wells Fargo two letters, which he self-designates as Qualified Written Requests ("QWRs"), on March 8, 2011 and June 13, 2011 to gain information about his lending source. Luther alleges, and Wells Fargo does not deny, that it failed to respond to these letters. (Dkt. No. 31.) Luther claims that Wells Fargo's failure to respond amounts to a violation of both TILA and RESPA. The FAC contains no allegations of the material disclosures that Wells Fargo failed to provide. Luther fails to allege with any specificity any actual or statutory damages. Rather, Luther merely states that he seeks "actual damages, statutory damages, treble damages, punitive damages, reasonable fees and costs for legal expense, destruction of all notes of first and second mortgage, full rescission of first and second mortgages, and any payments the court may determine." (Dkt. No. 31.)

I find that Luther's claims should be dismissed for the reasons discussed below.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The court accepts as true all well-plead facts and construes those facts in the light most favorable to the plaintiff. *Phillips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, "legal conclusions, formulaic recitation of the elements of a cause of action, or bare assertions devoid of further factual enhancements fail to constitute well-pled facts

4

for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir.2009) (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs must plead enough facts to "nudge[ ] their claims across the line from conceivable to plausible," and if the claim is not "plausible on its face," it must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. *Id.* at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Allegations made in a *pro se* complaint are "liberally construed, and … must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S.89, 93 (2007) (internal citation omitted). Notwithstanding this obligation, the court is not required to accept a *pro se* plaintiff's contentions as true, *Denton v. Hernandez,* 504 U.S. 25, 32 (1992), and cannot ignore a clear failure to allege facts positing a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir.1990). Moreover, the court does not act as the *pro se* plaintiff's advocate, *sua sponte* developing statutory claims that the plaintiff failed to clearly raise on the face of the complaint. *Id.* ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

5

# FRAUD

Federal Rule of Civil Procedure 9(b) governs whether Luther's bare allegations sufficiently state a claim for fraud. Failure to comply with Rule 9(b)'s particularity requirement for allegations of fraud is considered a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783, n. 5 (4th Cir. 1999).

The facts alleged in the complaint must "state with particularity the circumstances constituting fraud or mistake."[2] *See* Fed R. Civ. P. 9(b). Specifically, Rule 9 requires a plaintiff to plead with particularity – (1) the time and place the misrepresentations were made, (2) the contents of those representations, (3) the identity of the individual making the misrepresentation, (4) what the individual making the misrepresentation gained from making it, and (5) that the aggrieved party reasonably and detrimentally relied on those misrepresentations. *See Harrison*, 176 F.3d at 786; *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987). Furthermore, Virginia law requires a plaintiff to plead and prove by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance. *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (1994). "Mere allegations of 'fraud by hindsight will not satisfy the requirements of Rule 9(b)." *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F. 3d 204, 209 (4th Cir. 1994). Indeed, a plaintiff must clearly allege each specific element of fraud in the pleading. *Waytec Elecs. Corp. v. Rohm & Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 492 (W.D. Va. 2006), *aff'd* 255 F. App'x 754 (4th Cir. 2007).

---

[2] Despite the heightened pleading requirements under Rule 9(b), a court "should hesitate to dismiss a complaint . . . if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

6

The facts in the FAC are insufficient to make out a fraud claim against Wells Fargo. Luther alleges that on February 3, 2007, Turner, a bank officer at Wells Fargo, made the "false [sic] misrepresentation that the Defendant was loaning Plaintiff funds for a mortgage 1st and 2nd and credit card refinance when Plaintiff was the sole source of credit for the transaction the entire time." (Dkt. 31, ¶ 4.) Luther must allege both the representation and why the representation was misleading so as to allow the court to infer that Wells Fargo knew the statements were deceitful. *Dubowski v. Dominion Bankshares Corp.*, 763 F. Supp. 169, 172 (W.D. Va. 1991). The court can make no such inference here, because Luther fails to allege what representation Turner made and why it was deceitful. *Meek v. Townsend Real Estate, Inc.*, 5:11-CV-325-F, 2011 WL 7401670 (E.D.N.C. Dec. 21, 2011) *report and recommendation adopted as modified*, 5:11-CV-325-F, 2012 WL 555766 (E.D.N.C. Feb. 21, 2012)(noting that a party must state why such statements are misleading). Luther only conclusorily alleges that he relied on these representations to his detriment and entered into the loan agreement without full knowledge of the terms of the agreement, no consideration, and with no meeting of the minds. (Dkt. No. 30.) Finally, Luther fails to allege any actual damages caused by his reliance on Turner's misrepresentation other than the emotional distress caused by a lawsuit he himself brought. I find that Luther fails to plead the elements of fraud with specificity required by Rule 9(b), and therefore, recommend that this claim be dismissed with prejudice.

## **TILA**

TILA, a federal statute applicable only to creditors, regulates the relationship between lenders and borrowers to facilitate the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601, *et seq*. The Act requires creditors "to provide

7

borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA requires a creditor to disclose certain information at the time the loan is consummated and affords certain rights to rescission and damages for violations of those rules.

**TILA Claim for Rescission**

Under TILA, a borrower ordinarily has three days from the date of closing in which he may rescind the transaction in its entirety. 15 U.S.C. § 1635(a) ("[T]he obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section...."). However, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever comes first."). *See e.g.*, *Wolf v. Fed. Nat. Mortg. Ass'n*, 830 F. Supp. 2d 153, 159-60 (W.D. Va. 2011). In other words, the three-year time limit on a right to rescission pursuant to 15 U.S.C. § 1635(f) is absolute, the expiration of which extinguishes the borrower's rescission and the timeliness of which is measured by the filing of the suit. *Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625, 633 (E.D. Va. 2011) *reconsideration denied,* 838 F. Supp. 2d 424 (E.D. Va. 2012); *Yowell v. Residential Mortg. Solution, LLC*, 3:10-CV-00063, 2011 WL 3654388 (W.D. Va. Aug. 17, 2011).

Luther filed this suit on December 7, 2011 nearly four and half years after closing on February 23, 2007. [3] In his response to Wells Fargo's Motion to Dismiss, Luther requests that the statute of repose be equitably tolled. However, the three year statute of repose is a jurisdictional statue that is not subject to equitable tolling. *See Jones v. Saxon Mortgage, Inc.,* 537 F.3d 320, 327 (4th Cir. 1998). Therefore, to the extent that Luther could make a claim for rescission under TILA, this claim has been extinguished, and I recommend that Luther's claim for rescission be dismissed with prejudice.

**TILA Claim for Damages**

Under TILA, there is a one year statute of limitations for damages claims. Therefore, claims filed one year after the occurrence of the violation is time barred, unless equitably tolled. 15 U.S.C. § 1640(e). In his response, Luther argues that TILA's one-year statute of limitations is subject to equitable tolling.

Equitable tolling is applicable to the TILA one-year period of limitations where defendants fraudulently concealed information from the plaintiff during the statutory period which prevented the plaintiff from discovering those facts within the statutory period. *Mubeidin v. Homecomings Fin. Network, Inc.*, CIV. 7:05CV00794, 2006 WL 44326 (W.D. Va. Jan. 9, 2006). *See e.g., Barnes v. West, Inc.,* 243 F.Supp.2d 559, 563 (E.D.Va.2003) (citing *Supermarket of Marlinton v. Meadow Gold Dairies,* 71 F.3d 119, 122 (4th Cir.1995)) (finding that equitable tolling applies to TILA to remedy the effects of fraudulent concealment); *Barnes v. West, Inc.,* 243 F.Supp.2d 559, 563 (E.D.Va.2003); *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 751 (E.D. Va. 2009) *aff'd,* 332 F. App'x 113 (4th Cir. 2009). Being ignorant of a

---

[3] Luther alleges at the relationship was started on February 3, 2007 in ¶ 4 of his complaint and then Febraury 23, 2007 in ¶ 6 of his complaint. The promissory notes contain an effective date of February 23, 2007.

9

cause of action will not, in itself, toll the statute of limitations. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir.1987).

To invoke the doctrine of fraudulent concealment as a ground for equitable tolling, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *See Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir.1995). In short, Luther can show equitable tolling of the statute of limitations if Wells Fargo fraudulently concealed facts which prevented him from filing suit within the limitation period. That is, Luther would need to show that "he has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Chao v. Virginia Department of Transportation,* 291 F.3d 276, 283 (4th Cir.2002) (citing *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990)).

Luther fails to allege that Wells Fargo fraudulently concealed facts preventing him from filing this suit before the deadline passed. In certain circumstances, the "TILA violation itself may serve as the concealment that triggers equitable tolling." *Barnes*, 243 F. Supp. 2d at 564. Pursuant to 12 C.F.R. § 226.23 n. 48, "material disclosures" required by TILA are the percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule. *See Moore v. Flagstar Bank*, 6 F.Supp.2d 496, 504 (E.D.Va.1997). Luther does not allege that Wells Fargo failed to provide any of the material disclosures required by TILA. Thus, no factual basis exists to support equitable tolling of the statute of limitations. Luther's TILA claim for damages is time barred by the one year statute of limitations, and I recommend that it be dismissed with prejudice.

10

Even if Luther's claim for damages was not barred by the statute of limitations or extinguished by the statute of repose, Luther's claim for damages and for rescission must fail. Under TILA, to state a claim for damages, Luther must show that the TILA mandated disclosures were not made. 15 U.S.C. § 1640. To state a claim for rescission under TILA, Luther must additionally allege that he is able to tender the proceeds of the loan to his creditor in return for the release of the security interest on his property. *See Parham v. HSBC Mortg. Corp., 826 F. Supp. 2d 906 (E.D. Va. 2011) aff'd sub nom. Parham v. HSBC Mortg. Corp.,*2012 WL 1655391 (4th Cir. May 11, 2012*)* (citing *Am. Mort. Net., Inc. v. Shelton,* 486 F.3d 815, 820 (4th Cir.2007). Luther does not allege which material disclosures Wells Fargo failed to make to him or that he is able to tender the proceeds of the loan to his creditor. Therefore, even if Luther had timely filed his claim, he fails to facts upon which relief could be granted.

## RESPA

Luther alleges that Wells Fargo failed to respond to two letters, which he self-designates as Qualified Written Requests ("QWRs"), sent on March 8, 2011 and June 13, 2011.[4] Failure to respond to inquiries under RESPA 12 U.S.C. § 2605(e)(1)(A) allows a borrower to recover "actual damages" or statutory damages under Section 2605(f)(1)(A). RESPA requires a loan servicer, upon receipt of a borrower's QWR, to provide a written response acknowledging receipt of the correspondence within twenty days and to take certain actions with respect to the borrower's inquiries within sixty days of receipt. 12 U.S.C. § § 2605(e)(1)(A), (2).[5] *See Ward v.*

---

[4] For purposes of this motion to dismiss, we read Luther's QWRs attached to his original complaint into his amended complaint.

[5] The action required includes providing information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, conducting an investigation of the borrower's concerns, providing an explanation or clarification of the reasons the servicer believes the account is correct and, if necessary, making appropriate corrections to the borrower's account. 12 U.S.C. § 2605(e)(2)(B) & (C).

11

*Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 5:10-CV-119-F, 2012 WL 871119 (E.D.N.C. Mar. 14, 2012).

As a threshold matter, RESPA's duties to respond to certain qualified written requests applies to servicers of federally regulated mortgage loans, but not merely holders of the promissory notes. Under RESPA, "'servicer' means the person responsible for servicing a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). Luther has failed to allege that Wells Fargo is the "servicer" of his loan. Indeed, in his response to Wells Fargo's Motion to Dismiss, he admits to not knowing the exact relationship between himself and Wells Fargo. (Dkt. No. 35.) Luther fails to allege, therefore a necessary element of a RESPA claim – that Wells Fargo is a servicer of his loans. *See e.g., Bryant v. Wells Fargo Bank, Nat. Ass'n*, 5:10-CV-237-D, 2012 WL 928435 (E.D.N.C. Mar. 19, 2012) (dismissing a complaint where defendant did not act as a "servicer" within the meaning of the RESPA); *Powell v. Aegis Mortgage Corp.,* 2007 WL 98372, at *7 (D. Md. 2007) ("The inquiry response requirements of section 2605(e)(2) apply only to a loan 'servicer,' a term express defined in [section] 2605(i)(2).").

Luther claims that the document entitled "Qualified Written Request" dated March 8, 2011 and follow up dated June 13, 2011 and attached to the complaint are qualified requests under RESPA. Luther's letters to Wells Fargo do not constitute a QWR. A "qualified written request" consists of written correspondence from a borrower that identifies the borrower and account at issue, and "includes a statement of the reasons for the belief of the borrower ... that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The QWR must request "information relating to the servicing of [the] loan ..." *Id.* § 2605(e)(1)(A). RESPA defines "servicing" as:

12

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3).

Luther's self-identified "QWRs," challenge the validity of the loan and do not seek a communication relating to the servicing of the loan as defined by the statute. *See Ward*, 2012 WL 871119, at *10. Specifically, the letter states that "I request that you insure [sic] that I have not been the victim of such predatory servicing and lending practices." *See DeVary v. Countrywide Home Loans, Inc.*, 701 F.Supp.2d 1096, 1108 (D.Minn.2010) (explaining requests regarding the financing of the original loan, rather than information regarding the servicing thereof, are not covered by RESPA). Luther does not, at any time, allege any irregularities of Wells Fargo's servicing of the loan, and the letter does not positively identify purported errors with Luther's account or ask any questions about Wells Fargo's practice of serving the loan. *See Marsh v. BAC Home Loans Servicing*, 2011 WL 1196415 at *8 (M.D.Fla. March 29, 2011) (finding the notice sent by plaintiff did not qualify as a valid QWR because "[n]othing in the notice indicates that there was a problem with the servicing of the loan (e.g., the way BAC received plaintiffs' scheduled periodic payments due under the loan)"); *Hintz v. JP Morgan Chase Bank, N.A.*, 2011 WL 579339 at *8 (D.Minn. Feb.8, 2011) ("[T]he letters were not QWRs because [p]laintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "[p]laintiffs' letters had no relation to Chase's receipt or application of their payments."). The letters seem to be a fishing expedition to determine whether Luther has fallen prey to "potential fraudulent and deceptive practice by unscrupulous mortgage brokers." (Dkt. No. 3. Ex A) See e.g., *In re Ginn*, 465 B.R. 84, 95 (Bankr. D.S.C. 2012)(requests for a copy of pooling and service agreement does not fallwithin

13

the meaning of "servicing"); *Griffin v. Am. Home Mortg. Serv., Inc. (In re Griffin)*, 2010 WL 3928610, at *5 (Bankr.S.D.N.Y. Aug. 31, 2010) (finding that the debtors' "QWR" was outside the "definition of information that should be responded to in the QWR" because it goes beyond information related to loan servicing and appears to be "sought to assist the debtors, perhaps, in the potential negotiation of the loan and/or challenging the bona fides of the loan as it was originated").

Even assuming that Luther's letters were valid QWRs, to which Wells Fargo failed to respond, the RESPA claim fails for the independent reason that Luther has not adequately alleged damages. Courts in this circuit have consistently read Section 2605 to require pleading statutory and actual damages to state a claim under RESPA. *Bradford v. HSBC Corp.*, 2010 U.S. Dist. LEXIS 143531, at *22 n. 6 (E.D. Va. Sept. 20, 2010). *See also Ward*, 2012 WL 871119, at *11; *Ginn v. CitiMortgage, Inc. (In re Ginn)*, 2012 WL 112974, at *9 (Bankr. D.S.C. Jan.11, 2012) (noting "even if CitiMortgage did not comply with the RESPA provisions pertaining to QWRs [ ][p]laintiffs failed to sufficiently allege that they suffered actual and/or statutory damages resulting from CitiMortgage's alleged RESPA violation"); *Wittenberg v. First Indep. Mortg. Co.* 2011 WL 1357483, at *16 (N.D.W.Va. Apr.11, 2011) (holding "a plaintiff must allege that the loan servicer's failure to properly respond to a QWR caused pecuniary damage"). The only recoverable damages authorized Section 2605(f)(1) of RESPA are statutory and "actual" damages. A borrower may recover statutory damages where a loan servicer has demonstrated "a pattern of practice or noncompliance with the requirements of the section." 12 U.S.C. § 2605(f)(1) Luther has failed to allege any such facts, so he has no basis for statutory damages. Additionally, the conclusory assertion that Luther is entitled to "actual damages" is

14

insufficient to show plausibly that actual damages arose from Wells Fargo's failure to respond to the QWR.[6]

Therefore, I recommend that Luther's RESPA claim be dismissed with prejudice.

## PUNITIVE DAMAGES

Luther alleges that he is entitled to punitive damages. Punitive damages are not recoverable unless Luther alleges a separate and independent tort, which Luther has failed to do here. *Kamlar Corp. v. Haley*, 224 Va. 699, 707 (1983). Furthermore, neither RESPA, 12 U.S.C. § 2605(f)(1), nor TILA, 15 U.S.C. § 1640(a), authorize punitive damages. Nor has Luther alleged that Wells Fargo's actions were "willful and wanton." *Giant of Virginia, In. v. Pigg*, 207 Va. 679, 685 (1967); *Griffin v. Shively*, 227 Va. 317, 321-33 (1984). Therefore, I recommend that Luther's claim for punitive damages be dismissed with prejudice.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered, **GRANTING** Wells Fargo's Motion to Dismiss (Dkt. No. 32), **DENYING** as moot Luther's Motion for Summary Judgment (Dkt. No. 23), Motion for Leave to file an Amended Complaint (Dkt. No. 39), and Motion for an Extension of Time to Answer Defendant's Discovery Requests (Dkt. No. 40), and **DISMISSING** this case from the court's docket.

---

[6] There is some disagreement on whether RESPA provides for the recovery of non-pecuniary injuries such as emotional distress under "actual damages." *See McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009) aff'd, 398 F. App'x 467 (11th Cir. 2010); *In re Tomasevic*, 273 B.R. 682, 687 (Bankr.M.D.Fla. 2002) (finding that actual damages under section 2605 were limited to economic pecuniary injury); *Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 870 (N.D.Ill.2 002) (holding that RESPA's actual damages provision allows for the recovery of emotional distress); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809, 815 (N.D.Ill. 2001) (holding that actual damages under RESPA included emotional damages); *Wright v. Litton Loan Servicing LP.*, 2006 WL 891030, at *4 (E.D.Pa.2006) (concluding that "actual damages" included damages for non-economic losses, such as pain, suffering and emotional distress and awarding plaintiff $25,000 in non-pecuniary damages). However, Luther's passing reference without supporting facts to show an emotional distress claim is insufficient to satisfy the specificity by which emotional distress claims must be stated. Moreover, to the extent that courts in this circuit have limited recovery under RESPA to only actual pecuniary or economic loss, the non-pecuniary injury such as emotional distress, may not be recoverable in this circuit.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: August 6, 2012

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge